UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ERNEST WARD                                                                                             PLAINTIFF

v.                                                                   CIVIL ACTION NO. 3:13cv254-DPJ-FKB

MISSISSIPPI DEPARTMENT OF CORRECTIONS                                   DEFENDANT

consolidated with

ERNEST WARD                                                                                             PLAINTIFF

v.                                                                   CIVIL ACTION NO. 3:14cv365-DPJ-FKB

MISSISSIPPI DEPARTMENT OF CORRECTIONS                                   DEFENDANT

ORDER

These consolidated employment-discrimination cases are before the Court on Defendant Mississippi Department of Corrections's ("MDOC") Motion for Summary Judgment [49]. Having fully considered the premises, the Court finds that the motion should be granted.

I.      Facts and Procedural History

The instant lawsuits arise from a series of disputes concerning various employment privileges and alleged harassment between Ward, an African-American male, and his former employer, MDOC. Ward was hired by MDOC in 2003 as a Field Worker, and following his initial training, he applied for and received three promotions, ultimately to the position of Field Officer III. Ward Dep. [49-1] at 3  8.

The problems began in October 2011 when Ward's state-issued work vehicle was scheduled to be "deleted" from service. *Id.* at 16  17; Gutherz Dep. [49-2] at 6; Compl. [1] ¶ 10. MDOC personnel questioned Ward about his use of his state-issued vehicle and determined that

Ward's caseload no longer entitled him to its use; instead, Ward was required to share a "pool" vehicle with other drivers.  Ward Dep. [49-1] at 16  17; Gutherz Dep. [49-2] at 6.  In response, on November 16, 2011, Ward filed a grievance with MDOC, claiming that MDOC's questioning about his vehicle was harassment and that the loss of his vehicle was retaliation for a lawsuit he had filed against MDOC six years earlier in 2005.  Ward Dep. [49-1] at 16  17.  He additionally filed an EEOC charge concerning the incident on November 23.  *Id.* at 56.  Ward was subsequently offered a different caseload that carried with it the benefit of the vehicle, and he accepted the offer.  Gutherz Dep. [49-1] at 6.

The problems continued in April 2012 when Ward was moved into a new office with two officers of junior rank.  Ward Dep. [49-1] at 31  32.  MDOC claimed that the two white officers who were not required to move offices were senior to Ward and worked different case loads than him, but Ward believed that he was being discriminated against on the basis of his race and retaliated against for his previous EEOC charge.  *Id.* at 32  34.  As a result, he filed another EEOC charge the following day.  *Id.* at 57.

Two months later, in June 2012, MDOC took away Ward's weapon, allegedly in retaliation for his previous charges of discrimination filed with the EEOC.  *Id.* at 58.  Ward filed yet another charge with the EEOC a few days later.  *Id.*  As the charge filed with the EEOC notes, MDOC reprimanded him "for allegedly not making a home visit prior to issuing a warrant" and because his doctor had written a note recommending that Ward no longer carry a gun in a waist holster.  *Id.*

Following this series of disputes, Ward was transferred to a position at the restitution center.  Williams Dep. [49-4] at 9.  The parties dispute the extent to which the transfer was

voluntary, *id.* at 9–10; Ward Dep. [49-1] at 22–23, 59, but two weeks later Ward filed another charge with the EEOC, claiming that the transfer was in retaliation for his previous charges. Ward Dep. [49-1] at 59. Ward also complained that MDOC failed to train him after the transfer "in an effort to set [him] up for failure and subsequently discharge." *Id.* A month later, on October 24, 2012, Ward began an extended leave period and simultaneously announced his retirement effective July 1, 2013. *Id.* at 52–53.

As a result of these disputes, Ward filed Civil Action No. 3:13cv254 against MDOC on April 30, 2013, stating claims for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and intentional and negligent infliction of emotional distress.

The events underlying Ward's second suit relate to a promotion decision the summer of 2012. According Ward, MDOC sent two emails announcing an opening for a supervisory position; Ward applied each time. *Id.* at 9–13. But neither he nor anyone else was selected from the applicant lists generated from those announcements. According to MDOC, no promotion occurred because Christy Gutherz, the Community Corrections Director in charge of the hiring process, was unavailable to interview at the time the lists were generated. Gutherz Dep. [49-2] at 23. A third version of the announcement was subsequently posted, but Ward does not "recall seeing it." Ward Dep. [49-1] at 14. MDOC then conducted an interview and hired from the list generated in response to the third announcement—Ward was not on that list. Gutherz Dep. [49-2] at 27.

Aggrieved by these actions, Ward filed an EEOC charge in April 2013, complaining that he was not hired on the basis of his sex; he stated that the basis for this belief was that "[a] female was selected for the position." Ward Dep. [49-1] at 61. He then filed a separate action

3

against MDOC in Mississippi state court, stating claims of gender discrimination in violation of Title VII and Mississippi Code section 25-9-149, as well as claims for intentional and negligent infliction of emotional distress.

Following service of process, MDOC removed that case to this Court where it was given Civil Action No. 3:14cv365.  The two cases were later consolidated, *see* July 3, 2014 Order [22], and following completion of discovery, MDOC filed this Motion for Summary Judgment [49].  Ward responded [52], and MDOC replied [53].  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have

submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments do not constitute an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III.   Analysis

   A.   Retaliation

Ward alleges a series of retaliatory acts in Civil Action No. 3:13cv254.  "To set out a prima facie case of Title VII retaliation, a plaintiff must show (1) that []he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489  90 (5th Cir. 2014) (internal quotation marks omitted).

"'If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.'"  *Id.* at 490 (quoting *LeMaire v. La. Dep't of Transp. And Dev.*, 480 F.3d 383, 388-89 (5th Cir. 2007)).  "An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action."  *Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 333 (5th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533  34 (2013)).

MDOC argues that Ward has not established a jury issue on the causation element at either the prima-facie-case or pretext stages. The Court agrees. Ward's *only* argument on causation is as follows: "The evidence for causation is provided by the virtue of the timeframe in which each grievance was made by the Plaintiff and that even though the Plaintiff consistently placed MDOC on notice through the grievance process and EEOC the harassment continued." Pl.'s Resp. [52] at 6. This is not enough. While it is true that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation," *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997), "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Id.* at 1188 n.3 (alteration in original). Here, Ward has not pointed to any record evidence connecting his protected actions with MDOC's allegedly adverse actions.

Even assuming a prima facie case, MDOC has offered legitimate, non-retaliatory reasons for each of its actions. *See* Gutherz Dep. [49-2] at 6 (stating that Ward's vehicle was "slated to be deleted" and was taken because "[o]f his caseload type"); Ward Dep. [49-1] at 34 (conceding that other white officers who retained their offices had different case loads and more seniority than Ward); Williams Dep. [49-4] at 6  7 (stating that MDOC took back Ward's weapon because of medical concerns that he would not be able to carry it according to department protocol); Ward Dep. [49-1] at 23, 25  26 (conceding that his supervisor was on leave during the months he was to receive training, but that he in fact received eight hours of training from another employee). At this stage, MDOC faces a "burden is of production, not persuasion," *Reeves*, 530 U.S. at 142. (2000), and it has met that burden.

Thus, Ward bears the ultimate burden to show that MDOC's reasons are a pretext, and he has not done so. As mentioned in his briefing, all Ward can point to is the sequence of events. *See* Pl.'s Resp. [52] at 6. When asked at his deposition what evidence he had of retaliation, all Ward could say is that "every time I filed [a grievance], it seem like soon as I solved one, here come another one." Ward Dep. [49-1] at 20. But "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

The Court has endeavored to consider the record as a whole, but if there is any further evidence supporting causation, the Court is not aware of it. The section of Ward's response dedicated to his retaliation claim relies on timing and does not cite to the record. As often stated, the Court has no "'duty to sift through the record in search of evidence to support a party's opposition to summary judgment,'" *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 80 (5th Cir. 2010) (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). Conclusory assertions and arguments of counsel are not enough to sustain a claim. The motion is granted.

B.    Sex Discrimination

In Civil Action No. 3:14cv365, Ward claims sex-based discrimination related to the promotion decision first announced in summer 2012. "An employee presents a prima facie case of discrimination in a failure to promote case by demonstrating four elements: (1) that the employee is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or

7

promoted applicants with the plaintiff's qualifications." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

MDOC argues that Ward never applied for the position and therefore it was never in the position to evaluate him vis-a-vis his female comparator. But that alone is not fatal to Ward's claim. "[A] failure to apply for the position does not bar [Ward's] claim if []he can show that such an application would have been a futile gesture." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999). The Court therefore assumes, without deciding, that a prima facie case exists, and further finds that MDOC's argument reflects a legitimate non-discriminatory reason for the decision.

Returning then to Ward's ultimate burden, he must offer sufficient evidence to create a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Ward makes no such showing.

At most, Ward offers the conclusory assertion that he "sought a promotion for a position in which he was qualified to hold but the position was given [to] a female." Pls.'s Resp. [52] at 6. Significantly, he cites no evidence rebutting Gutherz's statement that they did not hire from the first two lists because she was unavailable at the time. *See* Gutherz [49-2] at 23. And as to the hiring decision that Gutherz eventually made, Ward never contends that he was the better candidate, offers no evidence that the stated reason was untrue, and cites no evidence otherwise suggesting that his sex was a motivating factor in the decision to offer the position to a woman.

8

Ward instead asserts that "once it became obvious to MDOC that Ward would continue to apply for the position, MDOC stopped providing the requisite notices to Ward." Pl.'s Resp. [52] at 7.  He then argues that he "did not receive e-mails about positions that had become available." *Id.* (citing "Exhibit 18").  These assertions are likewise unsupported.  First, Ward cites no evidence to support his allegation that MDOC intentionally stopped sending him the emails.  Second, he cites Exhibit 18 for the contention that he did not receive email notices during this time, but that exhibit is his grievance regarding the loss of his vehicle.  Pl.'s Resp. [52-18].  And in any event, his own deposition testimony merely states that he did not "recall seeing an e-mail at all."  Ward Dep. [49-1] at 15.  Finally, even assuming the email was not sent, Ward offers no evidence (or even argument) suggesting that his sex motivated the decision to exclude him from the email announcements.

As with his other claims, Ward almost completely fails to cite to the record as required by Federal Rule of Civil Procedure 56(c).  *Cf. Jackson*, 602 F.3d at 379  80.  And his "'subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.'" *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam) (alteration in original) (quoting *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983)).  Ward bears the ultimate burden of proof, and he simply has not carried that burden under Rule 56.  The motion is granted.

C.     Hostile Work Environment and Constructive Discharge

1.     Hostile Work Environment

To establish a hostile-work-environment claim on the basis of a supervisor's conduct,[1] a plaintiff must show "'(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a term, condition, or privilege' of employment." *Rhines v. Salina Constr. Techs., Ltd.*, 574 F. App'x 362, 366 (5th Cir. 2014) (per curiam) (alteration in original) (quoting *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013)).

> Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . . In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be actionable, the work environment must be both objectively and subjectively offensive.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotation marks omitted).

The Supreme Court has explained that "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*

---

[1] MDOC cites to the standard for harassment by coworkers in its briefing; however, Ward's Complaint only contains allegations of harassment by supervisors.

*v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (citation and quotation marks omitted).  In other words, the "conduct must be extreme to amount to a change in the terms and conditions of employment . . . ." *Id.*

MDOC argues that Ward has failed to point to extreme conduct; in response, Ward cites the following: (1) the relocation from his office; (2) the seizure of his firearm; (3) the denial of a request for leave; (3) reassignment to the restitution center; (4) a reprimand for not making a home visit prior to issuing a warrant; and (5) another written reprimand.  Pl.'s Resp. [52] at 8  9. But Ward offers no legal authority that such actions are "extreme," nor does the Court believe that they are.  Such actions are simply "ordinary tribulations of the workplace." *Faragher* 524 U.S. at 778.

Perhaps even more importantly, Ward cites no evidence supporting an inference that the actions were motivated by his race and makes no such argument.  Indeed, the only employment action for which Ward even offers comparators of a different race is his reassignment to a different office; but he admits that the white officers who were not moved were senior to him and had different caseloads than him and that the officer who took over his old office was also black. Ward Dep. [49-1] at 32  35.  In short, Ward's claim "must fail because of the utter lack of demonstration that race was involved" in the employment decisions. *Wooten v. Fed. Express Corp.*, 325 F. App'x 297, 304 (5th Cir. 2009) (per curiam) (affirming summary judgment). Accordingly, the motion is granted.

    2.  Constructive Discharge

"A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge.  To prove a constructive discharge, a plaintiff must establish that working

conditions were so intolerable that a reasonable employee would feel compelled to resign." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (internal quotation marks omitted). Certain employment events are relevant to this inquiry, including:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]

*Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alteration in original). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Kinney Shoe*, 237 F.3d at 566.

MDOC, pointing to Ward's deposition, states that Ward has already conceded that none of these events happened to him and that the claim should therefore be dismissed. Ward responds that the constructive-discharge claim is based on the decision to reassign him to the Restitution Center with the knowledge that he would not be able to immediately receive training. But Ward ignores the undisputed evidence that he did receive training. *See* Ward Dep. [49-1] at 23, 25 26 (conceding that his supervisor was on family leave during the months he was to receive training, but that he in fact received eight hours of training from another employee). And while he states that the "transfer to the Restitution Center was done to encourage Ward's resignation," Pl.'s Resp. [52] at 10, he cites no record evidence to support that assertion. *See Jackson*, 602 F.3d at 379 80.

Finally, and most obviously, the record simply fails to establish that the transfer to the Restitution Center, when viewed in a light most favorable to Ward, was "so intolerable that a

reasonable employee would feel compelled to resign." *Brown*, 237 F.3d at 566. Ward has not established a constructive discharge.

D. Remaining Claims

MDOC also seeks dismissal of Ward's claims under 42 U.S.C. §§ 1981 and 1983, as well as his state-law claims for intentional and negligent infliction of emotional distress. Ward now concedes that those claims should be dismissed. Accordingly, the motion is granted.[2]

IV. Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, MDOC's Motion for Summary Judgment [49] is granted, and all of Ward's claims are dismissed with prejudice.

Separate final judgments shall be entered in these actions in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 1st day of September, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[2]Ward also pleaded a cause of action for gender discrimination in violation of Mississippi Code section 25-9-149. State Court Compl. [49-7] ¶¶ 21, 23. As an initial matter, it is not clear whether Ward still pursues this as a separate cause of action    beyond MDOC mentioning the statutory section in the introduction to its opening memorandum, neither party discusses it further. Moreover, it is not clear whether the statute even provides a cause of action or what analytical framework to apply to such a claim. *See Miss. Emp't Sec. Comm'n v. Collins*, 629 So. 2d 576, 580 (Miss. 1993) ("[T]his section has not been interpreted by [the Mississippi Supreme Court] or any other Mississippi court and thus provides no analytical framework for determining instances of discrimination."). In *Collins*, the Mississippi Supreme Court relied entirely on federal law in order to analyze the state-law claims of discrimination. Accordingly, to the extent that Ward still pursues the claim, the Court dismisses it as abandoned, and, in the alternative, as meritless for the same reasons explained above with regard to the federal claims.